**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-4282**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

SHRONDA COVINGTON,

        Defendant – Appellant.

---

**No. 25-4283**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

TONYA FARLEY,

        Defendant – Appellant.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Roderick Charles Young, District Judge. (3:23-cr-00068-RCY-1; 3:23-cr-00068-RCY-2)

---

Argued: May 8, 2026                         Decided: July 2, 2026

---

Before WYNN, RUSHING, and HEYTENS, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge Heytens wrote the opinion, which Judge Wynn joined and which Judge Rushing joined except as to Part II(C)(2). Judge Rushing wrote an opinion concurring in part and dissenting in part.

———————————

**ARGUED:** Fernando Groene, FERNANDO GROENE, PC, Williamsburg, Virginia; Robert James Wagner, ROBERT J. WAGNER PLC, Richmond, Virginia, for Appellants. Katherine McCallister, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Harmeet K. Dhillon, Assistant Attorney General, Jesus A. Osete, Principal Deputy Assistant Attorney General, Andrew G. Braniff, Christopher C. Wang, Appellate Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————————

TOBY HEYTENS, Circuit Judge:

An incarcerated person—whom we will call W.W.—died a horrific death in Bureau of Prisons (BOP) custody. After an investigation, various BOP employees were charged with criminal offenses arising from W.W.'s death, including Shronda Covington and Tonya Farley. A jury found Covington guilty of violating W.W.'s constitutional rights under 18 U.S.C. § 242 and both Covington and Farley guilty of making false statements in violation of 18 U.S.C. § 1001.

We conclude the evidence was sufficient to convict Covington and Farley on all three counts and reject their various other challenges to their Section 1001 convictions. But we conclude the district court erred in: (1) denying Covington's request for a proximate-cause instruction on the Section 242 count; and (2) calculating Farley's offense level under the United States Sentencing Guidelines. We thus vacate Covington's conviction on the Section 242 count, vacate both defendants' sentences, and remand for further proceedings.

I.

Around 3:30 a.m. on January 9, 2021, W.W. began experiencing a medical crisis. Covington was the highest-ranking official on duty when the crisis began, and, for the next four-and-a-half hours, she was the only on-site official with authority to call a physician or send an inmate to the hospital.

Jurors heard competing stories about that night. According to correctional officers on duty, Covington was told that W.W. needed medical attention—specifically, that he kept falling and hitting his head, could not respond to questions, was incontinent, and was

3

"eating out of the trash can," JA 1909—but did nothing to help him. The government also presented evidence that, before clocking out at 8 a.m., Covington asked another officer to enter a record falsely stating that Covington had "done her rounds that night." JA 2111. In contrast, Covington insisted correctional officers never told her about W.W.'s symptoms.

Over the next 24 hours, multiple BOP employees interacted with W.W. as he continued to deteriorate. Farley—a BOP nurse—was one of those employees. Farley examined W.W., saw his alarming symptoms, learned he had fallen, and believed he might have a head injury. But rather than contacting the on-call physician (Dr. Young) or sending W.W. to the hospital per BOP policy, Farley called the prison's on-call psychologist, Dr. Biber. Farley told Dr. Biber about W.W.'s symptoms, said W.W. "wasn't going to go to the hospital," and relayed information from another nurse that W.W. "had a razor blade in his cell, [was] carrying it around, and that there was concern that he might try to use it to cut himself." JA 2470. Dr. Biber directed the prison to place W.W. on suicide watch. Farley then submitted a "clinical encounter" report stating W.W. showed no signs of "acute distress." JA 6108–09.

W.W. was strapped to a gurney and moved to a suicide-watch cell, where he was unstrapped. Over the next ten hours, W.W. repeatedly fell—crashing into walls and hitting his head. Officers saw those falls but did not intervene. Around 6:30 a.m. on January 10, 2021, W.W. fell headfirst into a wall and did not move again. Roughly 90 minutes later, BOP employees entered the suicide-watch cell and found W.W.'s dead body. A medical examiner concluded W.W. sustained multiple skull fractures and that the cause of death was blunt force trauma to the head.

4

The Department of Justice's Office of the Inspector General (OIG) launched an investigation into W.W.'s death. When OIG interviewed Covington, she claimed she did not know about W.W.'s symptoms on January 9 or ask another officer to enter a false record stating she did her rounds that morning. For her part, Farley claimed that: (1) she called Dr. Young (the on-call physician) on January 9; (2) Dr. Young told her to call Dr. Biber (the on-call psychologist); and (3) Dr. Young said W.W. "would not be going to the hospital." JA 2571–72.

Covington and Farley (as well as a third codefendant who was found not guilty on the sole charge against her) were charged with violating 18 U.S.C. § 242 by willfully depriving W.W. of his Eighth Amendment right to be free from cruel and unusual punishment. Such violations are generally misdemeanors. See *United States v. Cowden*, 882 F.3d 464, 475 (4th Cir. 2018). But if "bodily injury" or "death" "results from" a violation, the offense becomes a felony and the defendant is subject to more severe penalties. 18 U.S.C. § 242; see *Cowden*, 882 F.3d at 475. Here, the indictment charged that Covington's and Farley's conduct "resulted in" both W.W.'s bodily injury and death. JA 95. Covington and Farley also were charged with making false statements to OIG investigators in violation of 18 U.S.C. § 1001. Finally, Farley was charged with violating 18 U.S.C. § 1519 by including false information in her January 9 clinical report.

During the lead-up to trial, the parties disagreed about how the jury should be instructed on Section 242's "bodily injury . . . [or] death results from" element. Covington requested a proximate-cause instruction, asking the district court to charge the jury that the government "must prove beyond a reasonable doubt that W.W.'s death or bodily injury

5

was a proximate result of the defendant's conduct, in the sense of being a natural and foreseeable result of that conduct." JA 1173. In contrast, the government asserted it need only prove that Covington's actions were a but-for cause of W.W.'s injury or death. The district court sided with the government and gave instructions that referenced only but-for causation.

After an 11-day trial, the jury returned its verdict. On the Section 242 charges, the jury found Covington guilty and Farley not guilty and further found that Covington's Section 242 violation resulted in bodily injury to W.W. but not his death. The jury found both Covington and Farley guilty of making false statements to OIG investigators (the Section 1001 charges) but found Farley not guilty of making a false report (the Section 1519 charge).

At sentencing, the parties debated whether the district court could consider Farley's January 9, 2021, conduct in calculating the advisory Guidelines range for her sole offense of conviction: making false statements to OIG. Farley asserted her actions or omissions on January 9 were not "relevant conduct" as defined by the Guidelines; and, even if they were, a recent amendment barred the district court from considering conduct for which she was acquitted (deliberate indifference to W.W.'s constitutional rights and making a false clinical report). The district court disagreed and later applied three enhancements—in Guidelines lingo, "adjustments"—based on Farley's January 9 conduct. Without those enhancements, Farley's Guidelines range would have been zero to six months of imprisonment; including them increased that range to 10 to 16 months. The district court sentenced Farley to six months of incarceration followed by six months of home detention

6

and Covington to a year of incarceration followed by a year of home detention.

## II.

Covington challenges her 18 U.S.C. § 242 conviction on two primary grounds. She first argues that the district court erred by not instructing the jury that, for Section 242 purposes, bodily injury only "results from" a defendant's conduct if that conduct was both the but-for *and* proximate cause of the victim's injury. Covington also contends the jury heard insufficient evidence to find her guilty on the Section 242 count, both in general and on the bodily-injury enhancement.

We must start with Covington's sufficiency challenge because "any defendant who prevails" on such grounds is "entitled to a judgment of acquittal without further proceeding[s]." *United States v. Huskey*, 90 F.4th 651, 662 (4th Cir. 2024). For purposes of this appeal, we will assume that we assess sufficiency by reference to Section 242's true "elements" rather than "how the jury was instructed" in Covington's case. *Musacchio v. United States*, 577 U.S. 237, 243 (2016).[1]

Because the parties disagree about what Section 242's precise requirements are, our analysis will proceed in three parts. *First*, we ask whether—as a matter of statutory interpretation—Section 242's "bodily injury results from" language requires that the

---

[1] *Musacchio* holds that "when a jury instruction sets forth all the elements of the charged crime but incorrectly *adds* one more element, a sufficiency challenge should be assessed against the elements of the charged crime" rather than against the erroneous jury instruction. 577 U.S. at 243 (emphasis added). Because the parties have not briefed the issue and it is not outcome-determinative in this appeal, we assume without deciding that *Musacchio*'s rule extends to situations—like this one—when a district court allegedly *omits* a requirement rather than adding an incorrect one.

defendant's conduct be the proximate cause of the victim's injury. We conclude it does. *Second*, having identified Section 242's requirements, we consider whether there was sufficient evidence to support the jury's verdict. We conclude there was. *Third*, having determined Covington was not entitled to a judgment of acquittal, we ask whether Covington's Section 242 conviction must be vacated because the jury was improperly instructed. For a final time, we answer yes. We thus vacate Covington's Section 242 conviction and remand for further proceedings.

A.

"The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause." *Burrage v. United States*, 571 U.S. 204, 210 (2014). Conduct is an outcome's "actual" cause if "the result would not have happened in the absence of the conduct; or, putting it another way, that 'but for' the antecedent conduct the result would not have occurred." Wayne R. LaFave, 1 *Substantive Criminal Law* § 6.4(b) (3d ed. 2025) (LaFave). In contrast, "legal" or "proximate" cause is often described "in terms of foreseeability or the scope of the risk created by the predicate conduct" and "serves . . . to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline v. United States*, 572 U.S. 434, 445 (2014). Our threshold question here is whether Section 242's authorization of greater penalties when "bodily injury results" requires only a showing of but-for cause (as the government argues) or also that the defendant's conduct was the proximate cause of the victim's injury (as Covington contends).

8

This Court has already addressed that question in connection with Section 242's closely related neighbor: 18 U.S.C. § 241. Section 241 makes it unlawful to conspire against someone for exercising their constitutional rights, and, like Section 242, it imposes heightened penalties if a particular outcome "results from" the violation. See § 241 ("if death results from" a violation, defendant "shall be fined . . . or imprisoned for any term of years or for life, or both, or may be sentenced to death"). In *United States v. Harris*, 701 F.2d 1095 (4th Cir. 1983), this Court—quoting a case interpreting Section 242—stated that "the phrase 'if death results'" in Section 241 means "that the 'death ensued as a proximate result of the accuseds' willful violation of a victim's defined rights.'" *Id.* at 1101 (quoting *United States v. Hayes*, 589 F.2d 811, 820 (5th Cir. 1979)). The Second Circuit has likewise concluded that Section 241's "results from" language incorporates a proximate-cause requirement. See *United States v. Guillette*, 547 F.2d 743, 749–50 (2d Cir. 1976).

That conclusion lines up with background principles about how causation operates in criminal law. See *Hewitt v. United States*, 606 U.S. 419, 431 (2025) ("When interpreting statutes, we recognize that Congress legislates against the backdrop[] of certain unexpressed presumptions." (alterations and quotation marks removed)). As the Supreme Court has explained, if an offense "requires not merely conduct but also a specified result of conduct, a defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) . . . the 'proximate cause'[] of the result." *Burrage*, 571 U.S. at 210 (quotation marks removed); accord LaFave § 6.4; see also Model Penal Code § 2.03 (A.L.I. 2025). That general rule applies even when a statute does not "expressly impose" a

9

proximate-cause requirement. *Paroline*, 572 U.S. at 446.

Having previously stated that Section 241's "results from" language incorporates a proximate-cause requirement, it would be passing strange to read Section 242's identical "results from" language differently. Sections 241 and 242 trace their lineage to the same Reconstruction-era statute, and Congress first added "results" language to both provisions in the Civil Rights Act of 1968. See *United States v. Williams*, 341 U.S. 70, 73–74 (1951) (describing these provisions' common history); Pub. L. No. 90-284, § 103(a)–(b), 82 Stat. 73, 75 (1968). Indeed, this Court relied on Section 242 precedent—the Fifth Circuit's decision in *Hayes*—when construing Section 241 in *Harris*. See 701 F.2d at 1101. Because the two provisions travel together, we conclude that Section 242's "results from" provision also requires that the specified outcome (here, bodily injury) occur "as a proximate result of the accuseds' willful violation of" the victim's rights. *Id.* (quotation marks removed).

Adopting the government's contrary position would create a genuine circuit split, an outcome we generally "try to avoid." *Scott v. Baltimore Cnty.*, 101 F.4th 336, 348 (4th Cir. 2024). The First and Fifth Circuits have held that "death" only "results from" a Section 242 violation if it is the "proximate result of" the violation, *United States v. Marler*, 756 F.2d 206, 215–16 (1st Cir. 1985); *Hayes*, 589 F.2d at 821–22, and we know of no circuit going the other way. Cf. *United States v. Gonzalez*, 906 F.3d 784, 799 (9th Cir. 2018) (holding district court's failure to instruct on proximate cause was not so obviously erroneous as to constitute plain error, thus leaving open whether Section 242 has a proximate-cause requirement). We also cannot see—and the government does not identify—any reason we would interpret Section 242's "death results from" and "bodily

10

injury results from" clauses differently from each other.

The government does not grapple with either this Court's Section 241 precedent or the circuit split its preferred approach would create. Instead, the government relies on a line of cases about a different statute: a provision of the Controlled Substances Act authorizing enhanced penalties if "death or serious bodily injury results from" certain drug offenses. 21 U.S.C. § 841(b). In *Burrage v. United States*, 571 U.S. 204 (2014), the Supreme Court held that provision's "death . . . results from" language requires, at "minimum," that the defendant's conduct be a but-for cause of the victim's death while specifically reserving whether it also requires proximate cause. *Id.* at 208, 210–11. But like each of our "sister circuit[s] to address the question," *United States v. Jeffries*, 958 F.3d 517, 520 (6th Cir. 2020), this Court has concluded—both before and after *Burrage*—that Section 841(b) contains no proximate-cause requirement. See *United States v. Patterson*, 38 F.3d 139, 144–45 (4th Cir. 1994) (pre-*Burrage*); *United States v. Alvarado*, 816 F.3d 242, 249 (4th Cir. 2016) (post-*Burrage*).

Although the government's brief assumes that the logic of our Section 841(b) decisions transfers neatly to Section 242, the reality is not so simple. For one thing, we think our statements about the closely analogous Section 241 bear much more directly on our interpretation of Section 242 than those about a drug-trafficking provision housed in a different title of the United States Code. What is more, our sister circuits are divided about whether (and if so, when) Section 841(b)'s no-proximate-cause rule extends beyond that provision's specific context. Compare, *e.g.*, *United States v. Pineda-Doval*, 614 F.3d 1019, 1026–28 (9th Cir. 2010) (declining to extend Section 841(b) precedent to a human

11

smuggling statute), with *United States v. Webb*, 655 F.3d 1238, 1255–56 (11th Cir. 2011) (extending Section 841(b) precedent to a healthcare fraud statute).

Like the Ninth Circuit, we understand "[s]entencing factors applicable to drug crimes" like Section 841(b)'s penalty provision to be an "exception to the rule that the [g]overnment prove proximate cause when the charging statute calls for a certain result." *Pineda-Doval*, 614 F.3d at 1028. "[T]he prevailing sense in the courts" is that these factors create "strict liability," and thus, in that context, "[i]t is by no means unusual to peg the sentence to factors that were not known—or even foreseeable—to the defendant at the time the crime was committed." *Id.* (quotation marks removed). But strict liability offenses, while "not unknown to the criminal law," are "generally disfavored," which further suggests that Section 841(b)'s lack of a proximate-cause requirement may be the exception rather than the rule. *United States v. United States Gypsum Co.*, 438 U.S. 422, 437–38 (1978). And even if the logic of our Section 841(b) no-proximate-cause decisions extends to other statutes not currently before us (a question we do not decide), the government does not explain how the Reconstruction-era civil rights statute we consider here is analogous to the Controlled Substances Act in any relevant sense.

We recognize that Congress has included express foreseeability or proximate-cause language in some criminal statutes. See *Patterson*, 38 F.3d at 145 n.7 (comparing Section 841(b) with the since-repealed Section 848(m)(4) of the Controlled Substances Act); *Webb*, 655 F.3d at 1256–57 (collecting criminal statutes with proximate-cause language). And it is true that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that

12

Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotation marks removed). But that familiar rule of thumb is far less helpful when analyzing "*different* statutes," even when those statutes have "identical language." *Yates v. United States*, 574 U.S. 528, 537 (2015) (emphasis added). Much of the express foreseeability or proximate-cause language courts have identified appears in statutes that criminalize far different conduct than Section 242. See *Patterson*, 38 F.3d at 145 n.7 (continuing criminal enterprise provision of Controlled Substances Act); *Webb*, 655 F.3d at 1256–57 (provisions dealing with explosive devices, terrorism, criminal restitution, and aircraft-related fraud). What is more, Congress added express proximate-cause language to those other statutes decades after it first inserted "results" language into Section 242.[2] Cf. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (explaining that "[p]ost-enactment legislative history" does not "shed light on what legislators understood" when they enacted an earlier statute).

As far as we are aware, courts have identified only one criminal civil rights statute that includes express proximate-cause language. That statute is 18 U.S.C. § 247(d), which

---

[2] Compare Pub. L. No. 90-284, § 103(b), 82 Stat. 73, 75 (1968) (18 U.S.C. § 242), with Pub. L. No. 98-473, § 1014, 98 Stat. 1837, 2142 (1984) (18 U.S.C. § 844), and Pub. L. No. 100-690, § 7001, 102 Stat. 4181, 4391 (1988) (21 U.S.C. § 848(m)(4)), and Pub. L. No. 103-322, §§ 40113, 40221(a), § 250002(a)(2), 108 Stat. 1796, 1904, 1907, 1928, 2083 (1994) (18 U.S.C. §§ 2248, 2259, 2264, 2327), and Pub. L. No. 104-132, § 204(a), 110 Stat. 1214, 1227–28 (1996) (18 U.S.C. § 3663A), and Pub. L. No. 104-155, § 3, 110 Stat. 1392, 1392–93 (1996) (18 U.S.C. § 247), and Pub. L. No. 106-181, § 506(c)(1), 114 Stat. 62, 137–38 (2000) (18 U.S.C. § 38), and Pub. L. No. 107-56, § 809(a), 115 Stat. 272, 379–80 (2001) (18 U.S.C. § 3286), and Pub. L. No. 108-405, § 102(a), 118 Stat. 2260, 2263 (2004) (18 U.S.C. § 3771).

13

imposes enhanced penalties for destruction of religious property if "bodily injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by" Section 247. See *Webb*, 655 F.3d at 1256; see also 18 U.S.C. § 247(d)(3) (similar).

That language does not undermine our conclusion here. To begin—and unlike Section 241—Section 247 does not share a common statutory ancestor with Section 242. Compare *Williams*, 341 U.S. at 73–74 (describing how Sections 241 and 242 emerged from the same Reconstruction-era act), with S. Rep. No. 100-324, at 2–3 (1988) (citing "the growing number of incidents of religiously motivated violence" as the explanation for passing Section 247). Congress also added the "proximate result" language to Section 247 nearly three decades after it first added Section 242's "results" language. Compare Pub. L. No. 90-284, § 103(b), 82 Stat. 73, 75 (1968) (adding "results" language to Section 242), with Pub. L. No. 104-155, § 3, 110 Stat. 1392, 1392–93 (1996) (adding proximate-cause language to Section 247). Finally, and most importantly, Section 247(d)'s "proximate result" language does not modify that offense's causation element. Instead, it describes one category of *victims* whose harm can trigger the enhanced penalty provision: public safety officers "performing duties as a direct or proximate result of" the defendant's unlawful conduct. 18 U.S.C. § 247(d). Indeed, Section 247's *causation* element is phrased identically to Section 242's: Its enhanced penalties kick in only if "bodily injury results."

14

18 U.S.C. § 247(d).[3] For all those reasons, Section 247(d)'s use of "proximate" sheds little light on the question before us.

In sum, we hold that bodily injury only "results from" a defendant's Section 242 violation if the defendant's conduct was both the but-for and proximate cause of the victim's injury.

## B.

Having clarified the statutory requirements of a Section 242 bodily-injury offense, we turn to Covington's sufficiency challenge. In assessing sufficiency, we consider all evidence the jury had before it—"both admissible and inadmissible"—viewed "in the light most favorable to the prosecution." *Huskey*, 90 F.4th at 662 (quotation marks removed). We must assume the jury "resolved all credibility disputes or judgment calls in the government's favor" and "uphold the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quotation marks removed). Applying those rigorous standards, we conclude Covington was not entitled to a judgment of acquittal on the Section 242 count.

To show Covington violated the Eighth Amendment, the government had to prove that W.W. suffered from an "objectively serious" medical condition and that Covington "subjectively knew of and disregarded an excessive risk to [W.W.'s] health or safety." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Covington asserts there was insufficient

---

[3] We know of no decisions analyzing whether Section 247's "results from" language imposes a proximate-cause requirement.

evidence to prove either the objective or subjective elements, but the record tells a different story. The jury heard testimony that multiple officers told Covington during her shift that W.W. was falling repeatedly and hitting his head, could not respond to questions, and was incontinent and "eating out of the trash can." JA 1909. W.W.'s cellmate was so worried that he pressed the duress button at least five times. Based on that evidence, a reasonable jury could have found that Covington subjectively knew W.W. was suffering from an "objectively serious" medical condition that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hixson*, 1 F.4th at 302 (quotation marks removed).

Covington errs in claiming that she lacked the required mens rea for Section 242 liability because she did not personally know W.W., "b[ear] him ill will," or set out to violate his constitutional rights. Covington Br. 47. A defendant need not act with malice or "have been thinking in constitutional terms" to violate Section 242. *Screws v. United States*, 325 U.S. 91, 106 (1945). Instead, the statute requires that the defendant acted "with the particular purpose of violating a protected right" *or* "recklessly disregarded the risk that [she] would do so." *Cowden*, 882 F.3d at 474 (alterations and quotation marks removed).

The evidence would have permitted a reasonable jury to find that standard satisfied here. For purposes of Covington's sufficiency challenge, we must assume the jury credited witnesses' testimony that they repeatedly told her about W.W.'s symptoms. And despite conceding that BOP policy would have required her to act had she known about those symptoms, Covington admitted on the stand that she "took no action for [W.W.] that night." JA 3192. Given that testimony, a reasonable jury could have found that Covington,

16

at minimum, "recklessly disregarded the risk" that her failure to act would deprive W.W. of his rights. *Cowden*, 882 F.3d at 474 (alterations and quotation marks removed).

Finally, we reject Covington's contention that there was insufficient evidence to support a finding that she "caused serious bodily injury to W.W." Covington Br. 45. As we have explained, to satisfy that element, the government needed to prove that: (1) W.W. suffered at least one bodily injury; (2) but for Covington's unlawful omissions, W.W. would not have suffered that injury; and (3) Covington's unlawful omissions proximately caused that injury. "[B]odily injury" is a capacious term that includes, among other things, "any . . . injury to the body, no matter how temporary." *United States v. Perkins*, 470 F.3d 150, 161 (4th Cir. 2006) (quotation marks removed).

Here too, we conclude the evidence was sufficient to permit a reasonable jury to make the required findings. The jury heard evidence that W.W. fell repeatedly, both before and after Covington's shift ended. It also heard that Covington knew W.W. was in serious distress and that she did nothing to help him, both during her shift and upon leaving the facility. A reasonable jury could have concluded that, but for Covington's failure to intervene, W.W. would not have continued falling and sustaining bodily injury *and* that her failure to act had "a sufficient connection to" at least one of those injuries to satisfy the statute's proximate-cause requirement. *Paroline*, 572 U.S. at 444.

## C.

Having rejected Covington's sufficiency challenge, we turn to the jury instructions. Covington argues the district court should have instructed the jury that the government needed to prove W.W.'s "bodily injury was a proximate result of the defendant's conduct,

17

in the sense of being a natural and foreseeable result of that conduct." JA 1173. That argument raises two questions: (1) whether there was error; and, if so, (2) whether any error was harmless. We conclude the district court exceeded its discretion by failing to instruct the jury on proximate cause. And because the government has not discharged its burden to show that error was harmless, we vacate Covington's conviction on the Section 242 count and remand for further proceedings. See *United States v. McFadden*, 823 F.3d 217, 219–20, 228 (4th Cir. 2016).

1.

We review "[a] trial court's decision not to give a proposed instruction . . . for abuse of discretion." *United States v. Raza*, 876 F.3d 604, 614 (4th Cir. 2017). Refusing to give a particular instruction is "reversible error only if" the proposed instruction: "(1) was correct, (2) was not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instruction seriously impaired the defendant's defense." *Id.* (quotation marks removed). All three requirements are satisfied here.

The government dedicates its argument to the first issue, contending that "[n]o proximate cause instruction was required" because Section 242 requires only but-for causation. U.S. Br. 76–77. As we have explained, we disagree, and the government identifies no issues with the specific wording that Covington proposed. We thus conclude the proposed instruction accurately stated the law.

We also conclude the content of Covington's proposed instruction "was not substantially covered by" those the district court "actually gave." *Raza*, 876 F.3d at 614

18

(quotation marks removed). To the contrary, the jury was told the government need prove only that "but for the [d]efendant's deliberate indifference to [W.W.'s] serious medical needs, [W.W.] would not have suffered injury." JA 1343. The jury was never informed of the government's additional burden to prove that Covington proximately caused W.W. bodily injury. And even considering the jury instructions "as a whole," we cannot see how anything in the court's instructions "substantially covered" the missing proximate-cause requirement. *Raza*, 876 F.3d at 613–14 (quotation marks removed).

Finally, Covington's proposed proximate-cause instruction involved a "point so important that the failure to give the instruction seriously impaired [her] defense." *Raza*, 876 F.3d at 614 (quotation marks removed). Covington's theory of the case was—and remains—that she could not have foreseen the tragedy that ensued when she left the prison on the morning of January 9, 2021. We thus conclude the district court exceeded its discretion by declining to instruct the jury on proximate cause.

2.

Even when (as here) a defendant preserves an objection, erroneous jury instructions are subject to harmless-error analysis. See *Neder v. United States*, 527 U.S. 1, 8–10 (1999). "The burden rests on the government, the beneficiary of the error, to show harmlessness." *United States v. Garcia-Lagunas*, 835 F.3d 479, 488 (4th Cir. 2016).

Two types of harmlessness are potentially relevant here. *First*, failing to expressly instruct a jury about a particular element is harmless if "the jury necessarily found the omitted element" given the court's other instructions. *United States v. Brown*, 202 F.3d 691, 700 (4th Cir. 2000). *Second*, an instructional error is also harmless when "a reviewing

19

court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Id.* (quoting *Neder*, 527 U.S. at 17).

To begin, it is not clear the government has made any harmless-error argument. Rather, the government seems to have put all its eggs in the no-error basket, arguing that Section 242 has no proximate-cause requirement and the district court's instructions were thus correct.

The closest the government comes to a harmlessness argument is its claim that "no proximate-cause instruction was necessary" because bodily injury "is inherently foreseeable in most Section 242 cases" and "was an eminently 'foreseeable result' here" given the information Covington had. U.S. Br. 78–79 (discussing *United States v. Meany*, No. 3:22-cr-00085, 2024 WL 3907286 (W.D. Ky. Aug. 22, 2024)). To the extent that is a harmless-error argument at all, it seems to be of the second type described above: a *Neder*-style contention that, given the facts of Covington's case (or the facts of "most" Section 242 cases like Covington's, U.S. Br. 78), there was such "overwhelming evidence" of proximate cause that "the jury verdict would have been the same absent the error." *Neder*, 527 U.S. at 17. (In contrast, the government's brief does not point to any other jury instructions it believes required the jury to make findings that would have satisfied a proximate-cause requirement.[4])

---

[4] When asked at oral argument where it had advanced the first sort of harmlessness theory in its brief, the government again asserted that "bodily injury was an eminently foreseeable result here" and that "Covington was, literally, on notice here." Oral (Continued)

A *Neder*-style harmless-error inquiry is not simply a redo of our sufficiency analysis. When assessing sufficiency, we were required to "uphold the jury's verdict" so long as "*any* rational trier of fact" *could have* found beyond a reasonable doubt that Covington proximately caused W.W.'s bodily injury. *Huskey*, 90 F.4th at 662 (emphasis added and quotation marks removed). In contrast, an instructional error is not "harmless" so long as "the record contains evidence that could rationally lead to a contrary finding"— that is, a finding in the defendant's favor—"with respect to the omitted element." *Neder*, 527 U.S. at 19. Much like a civil plaintiff can properly defeat summary judgment but still lose at trial, it is entirely possible for a criminal defendant's sufficiency challenge to fail while an instructional-error argument succeeds. See, *e.g.*, *McFadden*, 823 F.3d at 226.

We conclude this is one such situation. Despite having rejected Covington's sufficiency challenge, we "cannot conclude beyond a reasonable doubt that the jury verdict would have been the same" had the jury received a proximate-cause instruction. *Neder*, 527 U.S. at 19. True, as recounted above, the jury heard testimony that Covington knew W.W. was falling during her shift and could have relied on those falls to support its verdict on the "bodily injury results" enhancement. But the jury also saw graphic video of W.W. trapped in the suicide-watch cell and violently crashing into walls for hours while BOP employees looked on—and could have relied on that evidence to support its bodily-injury finding. Covington had left the prison by that point, and a jury that received a

---

Arg. 43:00–43:32. Those are both *Neder*-style arguments (that the jury *would have* made a proximate-cause finding had it been asked) rather than an argument this jury *actually made* a proximate-cause finding given some other instruction it received.

proximate-cause instruction might have concluded that she could not reasonably have foreseen other BOP employees would act as they did. Because "the evidence was sufficient to permit, but not so overwhelming to compel, the jury to find" that W.W.'s bodily injuries were reasonably foreseeable to Covington, we conclude the government cannot carry its burden of showing the district court's failure to instruct on proximate cause was harmless. *McFadden*, 823 F.3d at 226; see *Neder*, 527 U.S. at 19. We thus vacate Covington's Section 242 conviction and remand for further proceedings.[5]

## III.

Covington and Farley raise various challenges to their false-statement convictions. We conclude none are meritorious and thus affirm the jury's guilty verdicts.

### A.

Covington and Farley argue the evidence was insufficient to find them guilty of making false statements to OIG investigators in violation of 18 U.S.C. § 1001(a). Applying the rigorous standards described above, we disagree.

Both defendants challenge only one of Section 1001's requirements: that the false statement must have been "material" to OIG's investigation. A statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the . . . body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quotation marks removed).

---

[5] Given our proximate-cause holding, we need not address Covington's arguments that other jury instructions relevant to her Section 242 charge were improper.

The evidence was sufficient to support a materiality finding against both defendants. The jury heard testimony that Covington falsely denied learning about W.W.'s symptoms while on duty and asking another officer to falsely record that she completed rounds. As for Farley, the jury heard evidence that she falsely claimed she called Dr. Young to discuss W.W.'s symptoms and that Dr. Young told her not to send W.W. to the hospital. The jury could have found those "denials" and "misrepresentations" were "material" because they could have caused OIG "to re-direct [its] investigation to another suspect" or otherwise "misdirect[] agents and their investigation." *United States v. Smith*, 54 F.4th 755, 769, 772 (4th Cir. 2022) (per curiam) (quotation marks removed).

Farley insists her lies were immaterial because OIG "already knew" she had not called Dr. Young and "was poised to press forward on . . . charges" no matter how she answered OIG's questions. Farley Br. 48. That argument runs headlong into this Court's decision in *Smith*, which states that it "makes no difference" to the materiality inquiry that "investigators already knew the answers to the questions they asked." 54 F.4th at 769–70 (quotation marks removed). Considering all the evidence before the jury, we conclude that a rational trier of fact "could" have found "that [Farley's] false statements were *capable* of influencing [OIG's] still-active investigation." *Id.* at 769.[6]

---

[6] Farley's reply brief suggests that her "alleged false statements" were a product of "the coercive setting and circumstances of the interrogation," as well as "the temporal distance between the events of January 9, 2021" and her interview. Farley Reply Br. 16–17. Any such argument is not properly before us because Farley's opening brief took—at most—only "a passing shot" at those issues. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (quotation marks removed). And even if those arguments had been preserved, we must view the evidence "in the light most favorable to the prosecution and (Continued)

B.

Covington and Farley also contend the Due Process Clause required prosecutors to search certain BOP employees' emails for potentially exculpatory or impeaching information.[7] Because Covington and Farley did not make that argument before the district court, we review only for plain error. See Fed. R. Crim. P. 52(b); *United States v. Catone*, 769 F.3d 866, 871 (4th Cir. 2014). We see none.

To be sure, the Due Process Clause requires prosecutors to learn of and disclose "any favorable evidence known to" those "acting on the government's behalf in the case," including "some of those who are part of the investigative team." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (first and second quotes); *United States v. Robinson*, 627 F.3d 941, 951 (4th Cir. 2010) (third quote). But neither Covington's nor Farley's briefs explain how the BOP employees in question were "part of the investigative team" led by OIG. *Robinson*, 627 F.3d at 951. A bald allegation that someone is a government employee is not enough— and Covington's and Farley's failure to do more than that here dooms any plain-error argument. See, *e.g.*, *United States v. Taylor*, 942 F.3d 205, 225 (4th Cir. 2019) (ATF officers investigating one crime and FBI agents investigating another were on distinct "investigative teams" for due process purposes, even though both ATF and the FBI are

---

assume the jury resolved all credibility disputes or judgment calls in the government's favor," not Farley's. *Huskey*, 90 F.4th at 662 (quotation marks removed).

[7] Despite briefly referencing the Jencks Act, Covington and Farley offer no substantive argument about that statute. Any Jencks Act issues thus are not properly before us. See *Grayson O*, 856 F.3d at 316.

DOJ components).[8]

C.

Covington argues the jury was improperly exposed to evidence that was inadmissible against her—specifically, graphic evidence about the injuries W.W. suffered in suicide watch. Covington asserts the district court should have excluded that evidence under Federal Rules of Evidence 401 and/or 403 or severed her trial from those of her codefendants to eliminate the need to introduce such evidence. We review both the district court's evidentiary ruling and its decision not to sever the trials for abuse of discretion. See *United States v. Medford*, 661 F.3d 746, 751 (4th Cir. 2011); *United States v. Najjar*, 300 F.3d 466, 473 (4th Cir. 2002).

The district court committed no abuse of discretion in concluding that the suicide-watch evidence was admissible against Covington and, therefore, that it need not sever the trials. The suicide-watch evidence was relevant to Section 242's "bodily injury . . . [or] death results" element because it established "that W.W., in fact, sustained injuries and died." JA 442; see Fed. R. Evid. 401. And the district court carefully balanced the video's "extremely disturbing" nature against its "considerable probative value," before concluding it did not "clear the high bar for exclusion" under Rule 403. JA 442, 445–46.

---

[8] It is unclear whether Covington and Farley also argue the district court violated Federal Rule of Criminal Procedure 17(c) by partially granting the government's motion to quash Covington's Rule 17(c) subpoena. Any such argument would fail because the modifications the district court made—to omit materials Covington already possessed or sought solely for purposes of impeachment—complied with Rule 17(c). See *United States v. Nixon*, 418 U.S. 683, 699, 701 (1974).

25

Applying the "highly deferential standard of review" applicable to Rule 403 balancing, we see no reversible error. *United States v. Gondres-Medrano*, 3 F.4th 708, 719 (4th Cir. 2021) (quotation marks removed).

### D.

Covington asserts the district court abused its discretion by refusing to instruct the jury that good faith is a defense to a false-statement charge. But this Court has held that a district court need not provide "a separate instruction on a good faith defense" if it "gives adequate instructions on specific intent," *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir. 1991), and Covington does not argue the district court's specific-intent instruction was inadequate. We thus reject this argument as well.

### E.

The district court committed no reversible error by preventing Farley from introducing evidence that W.W. had been convicted of child sex offenses. Farley seems to argue such evidence was relevant to the Section 242 deliberate-indifference charge, but Farley was acquitted on that count. Farley does not explain—nor do we understand—how W.W.'s criminal history was even potentially relevant to her false-statement charge or how excluding that evidence prejudiced her false-statement defense.

### F.

Farley argues the district court should have granted her motion for a new trial because the government failed to correct false testimony offered by a medical examiner. See *Napue v. Illinois*, 360 U.S. 264, 265, 269 (1959) (government violates a defendant's due process rights by failing "to correct the testimony of the witness which [the

26

government] knew to be false"). The district court concluded Farley waived that claim by raising it for the first time in a reply brief and, in the alternative, that the medical examiner's testimony was not false.

We see no reversible error on either front. "Generally, new arguments cannot be raised in a reply brief before the district court," and the court did not abuse its discretion by enforcing that rule here. *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) (quotation marks removed). Nor did the medical examiner testify (as Farley claims) that examiners tested for the cannabinoid K2 during W.W.'s autopsy. To the contrary, the medical examiner made clear that she could "not attest, with a hundred percent certainty, that [K2] was screened for." JA 1721.

G.

We also reject Farley's argument that she should receive a new trial on the Section 1001 charge because the jury was prejudiced by graphic evidence admitted to support the deliberate-indifference charge on which she was acquitted (for example, video of W.W. repeatedly falling in the suicide-watch cell). Even assuming that none of the evidence in question would have been admissible in a false-statement-only trial, we conclude that "the strength of the [g]overnment's evidence on" the false-statement charge and "the district court's explicit instruction that the jury must consider . . . each count separately" mitigated "any prejudicial spillover." *United States v. Barringer*, 25 F.4th 239, 249 (4th Cir. 2022) (quotation marks removed). Farley admitted at trial that she made multiple false statements to OIG investigators. In addition, the district court admonished the jury to "give separate and individual consideration to each charge against each

27

Defendant," JA 1312, and "except in *extraordinary* situations, we adhere to the crucial assumption that jurors carefully follow instructions," *Barringer*, 25 F.4th at 249 (quotation marks removed). Indeed, the jury's verdict here—finding one defendant (Covington) guilty on all counts, another (the third codefendant) not guilty in full, and Farley guilty on the Section 1001 count but not guilty on the other two counts—confirms the jury took the court's instruction seriously.[9]

## IV.

We end with Farley's sentencing challenges. Farley argues the district court erred in calculating her advisory Guidelines range by imposing three enhancements based on her January 9, 2021, conduct—conduct Farley claims should have been off-limits for Guidelines-calculation purposes. The government disagrees, asserting the district court properly relied on Farley's January 9 conduct because it is "relevant conduct" under Guideline § 1B1.3(a)(1) that need not be excluded as "acquitted conduct" under the recently promulgated Guideline § 1B1.3(c).

We conclude Farley's claim has merit. As we will explain, the district court was required to ask three questions to determine whether it could consider Farley's January 9, 2021, conduct in calculating her advisory Guidelines range. Based on our review of the

---

[9] Farley also argues that her prejudicial spillover, *Napue*, and due process arguments, taken together, establish "cumulative error" and necessitate a new trial. Because "none of [Farley's] claims warrant reversal individually" and none of the district court's individual rulings "work any cognizable harm," we "decline to employ the unusual remedy of reversing for cumulative error." *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (alterations and quotation marks removed).

sentencing transcript, we conclude the district court either skipped one of those questions or applied an incorrect legal standard in answering it. We thus vacate Farley's sentence and remand for resentencing.

A.

We review all criminal sentences "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). That said, "[a]n error in the calculation of the applicable Guidelines range, whether an error of fact or of law, infects all that follows at the sentencing proceeding, including the ultimate sentence chosen by the district court, and makes a sentence procedurally unreasonable even under our deferential abuse-of-discretion standard." *United States v. Diaz-Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008) (quotation marks removed). In assessing whether the district court accurately calculated Farley's Guidelines range—"including application of any sentencing enhancements"—we "review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Morehouse*, 34 F.4th 381, 387 (4th Cir. 2022) (quotation marks removed).

B.

"A defendant's Guidelines range is the product of two variables: a criminal history category and an offense level." *United States v. Revels*, 176 F.4th 824, 827 (4th Cir. 2026). Everyone agrees Farley's criminal history category is I. The issue before us involves her offense level.

Courts determine a defendant's offense level based on "all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the

29

offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (quoting U.S.S.G. § 1B1.3). Guideline § 1B1.3 defines the bounds of "relevant conduct." Subsection (a) establishes general rules that apply "[u]nless otherwise specified" elsewhere in the Guidelines. U.S.S.G. § 1B1.3(a). The recently promulgated subsection (c) is one such specification. See U.S.S.G. app. C, amend. 826 (effective Nov. 1, 2024) (adding this subsection). It states that—for Guidelines calculation purposes—"[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." U.S.S.G. § 1B1.3(c).

Under those rules, determining whether Farley's actions and omissions on January 9, 2021, constitute relevant conduct involves three steps.

*Step #1*: Is this "relevant conduct" as defined by subsection (a)? U.S.S.G. § 1B1.3(a). If not, the analysis ends and the court *may not* consider the conduct for Guidelines-calculation purposes. If so, the court must move to Step #2.

*Step #2*: Is this "conduct for which the defendant was criminally charged and acquitted in federal court"? U.S.S.G. § 1B1.3(c). If the answer is no, the analysis ends and the court *must* consider the conduct for Guidelines-calculation purposes. If the answer is yes, the court must proceed to Step #3.

*Step #3*: Does the conduct "establish[], in whole or in part, the instant offense of conviction"? U.S.S.G. § 1B1.3(c). Either way, the analysis ends here. If the answer is no, the court *may not* consider the conduct for Guidelines-calculation purposes. See *id.* But if the answer is yes, that conduct returns to the general "relevant conduct" bucket and the

court *must* consider it in calculating the defendant's Guidelines range.

To be sure, once the district court has properly calculated a defendant's advisory Guidelines range, it has "broad discretion to consider various kinds of information" in fixing the ultimate sentence. *United States v. Watts*, 519 U.S. 148, 151 (1997) (per curiam); accord 18 U.S.C. § 3661. But in calculating a defendant's Guidelines range—something a district court *must* do accurately to impose a procedurally reasonable sentence, see *Diaz-Ibarra*, 522 F.3d at 347—a sentencing court must follow the steps outlined above.

## C.

In her sentencing memorandum, Farley argued that "[t]he conduct from January 9, 2021 cannot be characterized as relevant conduct under the federal sentencing guidelines." JA 4968; see Farley Br. 30 (so arguing before this Court). And—although not labeled as such—her arguments embraced all three steps described above. At Step #1, Farley asserted that her actions and omissions on January 9, 2021, did not satisfy subsection (a) because they did not occur "*during the commission of the offense of conviction*, in preparation for *that offense*, or in the course of attempting to avoid detection or responsibility for *that offense*." JA 4968 (quoting U.S.S.G. § 1B1.3(a)(1)). At Step #2, she identified "willful deliberate indifference to [W.W.'s] serious medical needs," JA 4975, as "conduct for which [she] was criminally charged and acquitted in federal court," U.S.S.G. § 1B1.3(c). And at Step #3, Farley argued that the proposed enhancements were inappropriate because they relied on acquitted conduct that did not "establish, in whole or in part," her conviction on the Section 1001 count. JA 4979–81.

The district court rejected Farley's arguments and considered her January 9, 2021,

31

conduct in its Guidelines calculations. The court explained its ruling as follows:

> Here, the Court considers Ms. Farley's conduct on January 9, 2021, relevant conduct to her false statements even if those facts overlap with some of her acquitted conduct because Ms. Farley's conduct on January 9th, 2021, established the basis for her false statements. Therefore, it also necessarily implicates some of her acquitted conduct. To find otherwise would overlook the nature and context of her actions on January 9, 2021, and the role that that conduct played in her false statements.
>
> Therefore, to the extent that her acquitted conduct is implicated, the Court finds that the conduct underlying Ms. Farley's acquitted conduct also establishes, in whole or in part, the instant offense of conviction because there would be no false statements without Ms. Farley's conduct on January 9th, 2021. Therefore, the Court is not relying on Ms. Farley's acquitted conduct that Ms. Farley made a false report or was deliberately indifferent. Rather, the Court is considering Ms. Farley's relevant conduct as to her false statements.

JA 5346.

This analysis either skipped Step #1 or applied an incorrect legal standard in resolving it. As Farley noted in her sentencing memorandum, subsection (a) limits the general definition of relevant conduct to "acts and omissions . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A); see *United States v. Agyekum*, 846 F.3d 744, 751 (4th Cir. 2017) (describing the temporal limits listed at the end of subsection (a)(1) as applicable to both subsections (a)(1)(A) and (a)(1)(B)); see also U.S. Br. 111 (identifying subsection (a)(1)(A) as the provision "pertinent here"). Farley's only "offense of conviction" was a violation of Section 1001. That offense was committed in April 2023, when she lied to OIG investigators. At no point did the district court explain how any of

32

Farley's acts or omissions on January 9, 2021—more than two years *earlier*—occurred "during," "in preparation for," or "in the course of attempting to avoid detection or responsibility for" her April 2023 false statement offense. U.S.S.G. § 1B1.3(a)(1).

For its part, the government argues the district court properly found that Farley's acts and omissions on January 9, 2021, constituted relevant conduct under subsection (a) because they "provided critical context for" her false statement conviction. U.S. Br. 112–14 (emphasis removed). But if that was the basis for the district court's decision (and we are not sure it was), that would have been legal error. Because "relevant conduct" is a defined term under the Guidelines, the question before us is not whether Farley's acts or omissions on January 9, 2021, might be considered "relevant" in a colloquial sense or under Federal Rule of Evidence 401. Rather, "we must follow" subsection (a)'s "explicit definition" "even if it varies from" the "ordinary meaning" of the defined term. *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quotation marks removed). Thus, it does not matter whether Farley's January 9 conduct "provided critical context for" her Section 1001 conviction because that is not how subsection (a) defines relevant conduct. See U.S.S.G. § 1B1.3(a)(1).

The government invokes this Court's decision in *United States v. Agyekum*, 846 F.3d 744 (4th Cir. 2017), but that case hurts the government more than it helps. *Agyekum* held that a defendant's drug-distribution activities occurred "during the commission of" his offenses of conviction (structuring transactions) and were thus "relevant conduct" under subsection (a) because the two were both "temporally and qualitatively linked." 846 F.3d at 752. As *Agyekum* explained, both the transaction

33

structuring and drug distribution occurred during the same time period (the temporal link) and the defendant structured the relevant transactions to "conceal[ ] his illicit drug activity from law enforcement" (the qualitative link). *Id.* But here there is zero temporal overlap between Farley's acts and omissions on January 9, 2021, and the intentional false statements more than two years later that formed the basis for her sole conviction. *Agyekum* never suggested it would have reached the same conclusion if the defendant's drug dealing had been years before the transaction-structuring, and we struggle to see how such a result would have been possible given the Guidelines' language.

The two out-of-circuit decisions on which the government relies also do not move the needle. One is an "in preparation for" case, which falls squarely within subsection (a)'s definition of relevant conduct. See *United States v. Young*, 266 F.3d 468, 478 (6th Cir. 2001) (defendant's embezzlement activity was relevant to his money laundering conviction because he embezzled funds "[i]n preparing to commit the money laundering offense"). The other focuses on language that no longer appears in subsection (a) (conduct "for which the defendant would be otherwise accountable") while failing to grapple with the still-present "during," "in preparation for," or "in the course of attempting to avoid detection or responsibility for" requirements. See *United States v. Cianci*, 154 F.3d 106, 112–13 (3d Cir. 1998) (quotation marks removed).

"[M]indful that we are a court of review, not of first view," *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005), we do not definitively resolve whether Farley's January 9 conduct could, as a factual matter, qualify as "relevant conduct" under subsection (a). Instead, we conclude that the district court either failed to make that determination or

34

applied the wrong legal standard in doing so. Because either error would have rendered Farley's sentence procedurally unreasonable, we vacate her sentence and remand for resentencing.[10]

*    *    *

We affirm the judgments of conviction on both Section 1001 counts. We vacate Covington's conviction on the Section 242 count, vacate her sentence on both counts, and remand for further proceedings consistent with this opinion. See *United States v. Velasquez*, 52 F.4th 133, 142 (4th Cir. 2022). We also vacate Farley's sentence and remand for further proceedings consistent with this opinion.

<em>SO ORDERED</em>

---

[10] Because the district court erred at Step #1, we do not reach any questions about Steps #2 or #3 (acquitted conduct). If the district court reaches those steps on remand, however, we emphasize that "the word 'establishes'" in subsection (c) cannot "mean[] to sweep up all 'relevant conduct'" because that would render "the acquitted-conduct amendment" a nullity. *United States v. Shafa*, 175 F.4th 1, 31 (1st Cir. 2026); cf. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020) (courts presume amendments are intended to "have real and substantial effect" (quotation marks removed)).

RUSHING, Circuit Judge, concurring in part and dissenting in part:

I concur in all but Section II.C.2 of the majority's opinion. I part ways with the majority, however, with respect to vacating Covington's Section 242 conviction. Although I agree that the district court erred by declining to instruct the jury on proximate cause, I would nevertheless affirm Covington's conviction because the instructional error was harmless given the findings that the jury *did* make.

The Court correctly holds that, under Section 242, "bodily injury results from" a defendant's conduct only if that conduct was both the but-for cause and the proximate cause of the victim's injury. 18 U.S.C. § 242. The district court therefore erred when it refused Covington's request to instruct the jury that the Government needed to prove W.W.'s "bodily injury was a proximate result of the defendant's conduct, in the sense of being a natural and foreseeable result of that conduct." J.A. 1173.

But "an instructional error is harmless in circumstances where the jury actually made an equivalent or identical finding pursuant to another instruction." *United States v. Whitfield*, 695 F.3d 288, 304 (4th Cir. 2012) (internal quotation marks omitted); *see also United States v. Brown*, 202 F.3d 691, 700 (4th Cir. 2000) (noting that an instructional error is harmless if "the jury necessarily found the omitted element"). That is what occurred here.

By convicting Covington of deliberate indifference to W.W.'s serious medical needs, the jury necessarily found that bodily harm was a foreseeable result of Covington's conduct. The logic proceeds as follows. First, the district court instructed the jury that, to prevail on its theory of Section 242 liability in this case, the Government had to prove that

36

"the conduct of the Defendant deprived" W.W. of the right "to be free from a correctional official's deliberate indifference to his serious medical needs." J.A. 1338. A "serious medical need" is one that "has been diagnosed by a physician as mandating treatment" or "is so obvious that even someone who is not a doctor would easily recognize the necessity of a doctor's attention." J.A. 1339. Second, to find that Covington deprived W.W. of that right, the jury had to find that Covington "had actual knowledge of the risk of harm" to W.W. and actually "recognized that her actions were insufficient to mitigate the risk of harm to [W.W.] arising from his medical needs." J.A. 1340. Third, the harm alleged and argued to the jury was bodily injury. Accordingly, when the jury convicted Covington of violating Section 242, the jury necessarily found that Covington actually foresaw that her actions would result in bodily injury to W.W. And to find that bodily injury was actually foreseen in these circumstances, the jury necessarily must have found it to be a natural and foreseeable result. Because the jury "necessarily found" proximate causation pursuant to the instructions that were given, the district court's failure to include the proximate-cause instruction was harmless. *Brown*, 202 F.3d at 700; *see also Whitfield*, 695 F.3d at 304.

The Government preserved this harmless error argument. In its brief on appeal, the Government argued that "[b]odily injury is inherently foreseeable in most Section 242 cases and is particularly foreseeable in a case such as this one involving the denial of medical care to an inmate with a serious and obvious medical need." Resp. Br. 78. By arguing about the findings "inherent[]" in the conviction, the Government correctly contended that proximate causation was already baked into the elements of the offense for

37

which the jury was instructed.  *Id.*  That makes the error harmless, and harmless errors "must be disregarded" on appeal.  Fed. R. Crim. P. 52(a); *see* 28 U.S.C. § 2111.

Because the district court's instructional error was harmless, I would affirm Covington's Section 242 conviction.[*]  Accordingly, I respectfully dissent in part.

---

[*] Covington also challenges the district court's denial of her requested willfulness and hindsight instructions on the Section 242 charge.  Given its proximate-cause holding, the majority does not address these arguments.  *See* Maj. Op. 22 n.5.  I would conclude that these additional arguments lack merit.